# EXHIBIT B

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, Q

FILED
11/9/2022 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2019L006285
Calendar, Q
20220133

FILED DATE: 11/9/2022 12:00 AM   2019L006285

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

VIKRAM KUMAR,  )
an Individual,  )
 )
Plaintiff,  )
 )
v.  )   Case No. 2019 L 6285
 )
 )
ANTHONY MICHAEL INTERIOR DESIGN, LTD.  )
an Illinois Corporation, and ANTHONY MICHAEL,  )
an Individual,  )
 )
Defendants.  )

### THIRD AMENDED COMPLAINT AT LAW

Plaintiff, Vikram Kumar, for his Amended Complaint against Defendants Anthony Michael Interior Design, Ltd. and Anthony Michael states as follows:

### PARTIES

1. Vikram Kumar ("Kumar") is an individual who resides in Cook County, Illinois.

2. Anthony Michael Interior Design, Ltd. ("AMID") is an Illinois Corporation registered to do business in Illinois with its primary place of business located at 2501 W. Washington Blvd., Chicago, IL 60612.

3. AMID, as part of its business, provides various interior design services to clients.

4. Anthony Michael ("Anthony") is and was the owner of AMID at all times relevant to the facts set forth in this pleading.

5. Anthony provides various interior design services to clients and provided interior design services to Kumar at all times relevant to the facts in this pleading.

FILED DATE: 11/9/2022 12:00 AM   2019L006285

## VENUE AND JURISDICTION

6. This Court has jurisdiction over all of the parties because the events which give rise to this cause of action occurred within the State of Illinois.

7. Venue is proper in Cook County because the transaction, or some part thereof, occurred in Cook County.

## COUNT I
## BREACH OF CONTRACT
## (AMID)

8. On or about March 6, 2018, Kumar and AMID entered into discussions about hiring AMID and Anthony to provide interior design services for Kumar's property located in Chicago, IL ("Property").

9. On or just prior to March 15, 2018, AMID and Anthony presented Kumar with floor plans, renderings and material and design components that would be used for the remodeling project Kumar was considering for the Property (the "Presentation"). A copy of the Presentation is attached as Exhibit A

10. Anthony told Kumar that the work and materials depicted in the Presentation would be completed for a budget of approximately $150,000.

11. On March 15, 2018, Anthony brought Kumar to one of AMID's vendors, Eggersmann USA LLC ("Eggersmann") to review the features of an automated master bedroom closet.

12. No later than April 19, 2018, Kumar and AMID entered into a Letter of Agreement ("LOA") for the remodeling work, a copy of which is attached as Exhibit B.

13. In the LOA, AMID agreed to redesign and renovate the entrance way, family room, living room, dining room, and master closet while also providing green box wood walls. The

2

estimated budget for the project was increased to $200,000 to take into account Kumar's election to use the Eggersmann master bedroom closet.

14. Before Kumar signed the LOA he was told by Anthony that the $200,000 budget would cover the design fee, design components, materials, and labor associated with the project, unless the size, scope and complexity of the project materially changed.

15. The LOA states: "(A)ccurate estimates cannot be given until design plans are finalized. After we provide you with our Proposal, that is the time when we will go through the proposed project with you item by item and value engineer or delete items if necessary for budgetary reasons while maintaining the overall integrity of the project."

16. On or about May 8, 2018, the parties agreed that as part of the project AMID and Anthony would also redesign the master bathroom in exchange for an additional payment not to exceed $75,000, which was to include all design components, material, and labor. (The LOA and agreement to redesign the master bathroom are hereinafter collectively referred to as the "Contract").

17. Anthony told Kumar that the $75,000 amount would cover all costs associated with design, materials, and labor in order to complete the redesign and renovation of the master bathroom.

18. Anthony further told Kumar that in calculating the cost of labor and materials to reach the total Contract price of $275,000, AMID would charge for the labor and materials necessary to perform the work set forth in the Contract for the price set forth in the Contract on a "cost plus" basis by adding 20% to the amounts AMID paid for the labor and 35% to the amounts AMID paid for the materials to outside contractors and vendors as set forth in the LOA.

19. Thus, pursuant to the terms of the Contract, AMID agreed to provide the following work for a sum not to exceed $275,000:

    a. Redesign and remodel the entrance way;

    b. Redesign and remodel the family room;

    c. Redesign and remodel the living room;

    d. Redesign and remodel the dining room;

    e. Redesign and remodel the master bathroom;

    f. Redesign and remodel the master bedroom closet with an Eggersmann closet system; and

    g. Provide green box wood walls;

20. At no time did Kumar select or change any design elements or materials for the project.

21. AMID and Anthony selected all design elements/materials and presented them to Kumar as finalized designs that would fit within the agreed-upon $275,000 budget.

22. No additional modifications or upgrades to the original scope of the project were agreed to by the parties.

23. Work on the redesign and renovation project for Kumar's Property began on March 15, 2018 when Kumar provided a deposit check of $22,500 to AMID.

24. AMID and Anthony indicated to Kumar that the project would be complete by the end of July 2018.

25. AMID and Anthony did not send the Proposal require by the LOA to Vikram until June 18, 2018, when they sent a Proposal in the amount of $439,862.75, along with a request for

an additional payment of $78,959.40. A copy of the June 18, 2018 Proposal is attached as Exhibit C.

26. The Proposal did not include the vendor costs and mark-ups as required by the LOA.

27. At the time the Proposal was sent, Vikram had already paid AMID $227,909.42.

28. Vikram immediately responded by questioning the accuracy of the Proposal.

29. At no time did AMID, Anthony, or any other employee or agent of AMID discuss the item by item elements of the project with Kumar or obtain consent from Kumar to exceed the $275,000 budget, AMID simply commenced work on the project and sought payments from Kumar.

30. Kumar never approved the Proposal.

31. Vikram made the additional payment of $78,959.40 sought by AMID and Anthony on June 18, 2018 because he and his family were living with relatives waiting to move into the residence upon completion of the construction and on that date Anthony told Vikram that AMID would cease all work on the project if this payment was not made.

32. By July 2018 the project was nowhere near complete. After July 15, 2018, while Anthony and AMID were aware that Kumar and his family were living with relatives in Kildeer, Illinois because the residence was uninhabitable, Anthony and AMID made ever increasing demands on Kumar for payments for labor and materials that were supposed to have been included in the Contract.

33. In or about mid-September 2018 Kumar and his family were able to move into the residence, but for the next two months they had to live out of their guest room because of the incomplete construction work.

34. To date, Kumar has paid the following sums for labor and materials that were included in the Contract:

   a. $402,990.60 to AMID;

   b. $60,585.60 to Indigo, which was a general contractor for AMID and whom AMID's project manager asked Kumar to pay directly;

   c. $38,562 to Digital Living for electrical work and light fixtures selected by AMID which were included in the Contract;

   d. $3,250 to Lior for shower glass that AMID neglected to obtain and install;

   e. $6,608 to Beckerworks Ltd., which was a subcontractor hired by AMID to perform marble work;

   f. $13,159 to Indigo, the general contractor, to complete additional construction work; and

   g. $8.900 to Crooked Oak to complete the master bedroom closet and bathroom work.

35. Even with all these payments, $38,182.46 worth of work was not completed by AMID as set forth in the proposal. A summary of the incomplete work is attached as Exhibit D.

36. In addition, AMID and Anthony provided different and lower quality materials and services than those set forth in the Presentation and required by the Contract with a lesser value of approximately $73,446.90, as itemized in summary attached as Exhibit E.

37. Therefore, to date, Kumar paid a total of $259,055.20 beyond the Contract amount for the project to be completed and not left as an unsafe construction zone.

38. On or about November 27, 2018, when Kumar refused to make any further payments to AMID, Anthony advised all contractors to cease working on the project and AMID abandoned the project without completing the work required by the Contract.

39. AMID failed to pay the painting contractor which it hired for the project, thus causing the contractor to record a mechanics lien against the residence which AMID continues to refuse to satisfy.

40. Accordingly, AMID has breached the Contract in the following respects:

   a. Billed Kumar for amounts in excess of the Contract price for the work set forth in the Contract;

   b. Failed to perform the work it was required to perform pursuant to the terms of the Contract;

   c. Failed to provide Kumar with a timely item by item proposal with costs and mark-ups;

   d. Failed to obtain Kumar's acceptance of the Proposal; and

   e. Failed to pay for labor and materials that it was required to provide pursuant to the Contract, thus forcing Kumar to directly pay for the labor and materials in addition to the excess amounts billed by AMID;

41. Kumar has performed all obligations he was required to perform under the Contract.

WHEREFORE, the Plaintiff, Vikram Kumar, demands judgment in his favor and against Defendant, Anthony Michael Interior Design, Ltd., in amount in excess of $75,000, plus pre-judgment interest and any other relief this Court deems just and proper.

### COUNT II
### COMMON LAW FRAUD
### (AMID AND ANTHONY)

42. Kumar re-states the allegations of Count I.

43. Anthony's conduct set forth herein was undertaken as the owner and operator of AMID.

44. AMID's conduct set forth herein was undertaken at the direction and control of Anthony.

45. Anthony and AMID are collectively referred to herein as "Defendants."

46. In order to induce Kumar to enter into the contract, Anthony represented to Kumar that AMID would provide the labor and materials to complete the work set forth in the Contract for an amount not to exceed the budget agreed upon in the LOA and contract.

47. In order to induce Kumar to enter into the Contract, Anthony further represented to Kumar that AMID would charge for the labor and materials necessary to perform the work set forth in the Contract for the price set forth in the Contract by using the cost plus mark-ups of 20% for labor and 35% for the materials.

48. In order to induce Kumar to enter into the Contract, Defendants represented to Kumar that they would provide a Proposal with a line by line itemization that included the costs and mark-ups for the work to be performed so that Kumar would be able to decide whether ot approve any work that exceeded the contractual amount

49. Kumar reasonably relied on Anthony's representations when he entered into the Contract with AMID.

50. Each of Anthony's representations were false and were known by him to be false at the time they were made.

51. Anthony had no intention of completing the work set forth in the Contract for the amount set forth in the Contract, rather, Anthony knew at all times that he would charge several hundred thousand dollars more for the work required to be performed by AMID.

52. Anthony knew at the time he agreed to the terms of the Contract on behalf of AMID that he would later claim that not all of the labor and materials set forth in the contract were

8

included in the Contract, and that he would demand additional payments for such labor and materials once work commenced on Kumar's residence.

53. Anthony knew at the time he agreed to the terms of the Contract on behalf of AMID that he would cause AMID to not pay all of the contractors and suppliers AMID hired for the project, thus requiring Kumar to pay the contractors and suppliers.

54. Anthony knew at the time he agreed to the terms of the Contract that AMID would not complete the work set forth in the Contract within the time frame set forth in the Contract.

55. Anthony knew at the time he agreed to the terms of the contract that AMID would not adhere to the cost plus markups set forth in the Contract.

56. Anthony knew at the time he agreed to the terms of the Contract that he would wait until the project was well under way to begin the wrongful conduct complained of above so that it would be impractical if not impossible for Kumar to remove AMID from the project and retain a different design/build firm to complete the project, which effectively prevented Kumar and his family from living in their residence for a prolonged and undetermined period of time.

57. The wrongful conduct set forth herein was part of a scheme to defraud Kumar undertaken by Defendants (the "Bait and Switch Scheme").

58. As part of the Bait and Switch Scheme, Defendants' customary and usual business practice was to use the AMID letters of agreement to induce customers into contracting with AMID, knowing that AMID would not perform the work and provide the services set forth in the letters of agreement for the budgeted amounts.

59. In fact, AMID routinely charged its customers far in excess of the amounts set forth in its letters of agreement for the work detailed in the letters of agreement.

FILED DATE: 11/9/2022 12:00 AM   2019L006285

9

FILED DATE: 11/9/2022 12:00 AM    2019L006285

60. On information and belief, other customers whom AMID charged amounts far in excess of their letter of agreement with AMID included Dr. Razzak.

61. Defendants' customary and usual business practice was to have AMID enter into cost plus contracts with its customers knowing that AMID would charge in excess of the cost plus amounts set forth in its contracts.

62. To complete the Bait and Switch Scheme, Defendants refused to provide Kumar with AMID's invoices reflecting its actual costs for labor and materials used on the project, thus concealing from Kumar what would have been the proper cost plus charges to which AMID was entitled.

63. Even in discovery responses after this lawsuit was filed, Defendants have claimed they are unable to provide all of the invoices which would show AMID's actual costs paid for the labor and materials used on the project, thus preventing Kumar from determining the full extent to which AMID marked up the cost of labor and materials at a higher percentage than what was set forth in the LOA.

64. Kumar is aware of several instances where AMID marked up labor and materials at a percentage of 50% or higher, including for materials and/or labor provided by entities known as Art Addiction and Signature Hardware..

65. Defendants' customary and usual business practice was to have AMID enter into agreements to provide materials and labor knowing that subsequently they would claim some of the materials and labor were not included in the work to be performed by AMID once work on the construction projects began and the customers could not change design/build firms without incurring significant inconvenience and expense.

FILED DATE: 11/9/2022 12:00 AM   2019L006285

66. For example, after entering into the Contract AMID falsely claimed that the boxwoods were not included in the Contract and demanded that Kumar separately pay for them.

67. Similarly, the Contract required AMID to pay for the work set forth in paragraph 19 (a) through (g) herein, but after entering into the Contract AMAnthony and AMID falsely claimed that this work was not included in the Contract and demanded that Kumar separately pay for the work.

68. AMID's demands that Kumar make additional payments for work that was included in the Contract were undertaken as part of Defendants' customary practices intended to extract additional payments from its customers.

69. At the time AMID entered into the contract, Defendants had no intention of adhering to the cost plus markups set forth in the Contract but, rather, knew that as part of their usual and customary business practices AMID would regularly and repeatedly misstate the amounts it paid for labor and materials, refuse to provide Kumar and other customers with AMID's invoices for the labor and materials and charge in excess of the cost plus percentages.

70. As part of the Bait and Switch Scheme, Anthony regularly refused to pay suppliers and contractors for the materials and labor for AMID's projects, either refusing outright to pay the suppliers and contractors or negotiating partial payments to them, while still pocketing the agreed-upon or excessive cost plus amounts from the AMID customers.

71. The contractors AMID failed to pay at all or in full included carpenters, plumbers, electricians and wallpaper hangers.

72. The suppliers AMID failed to pay at all or in full included drapery and closet businesses.

73. AMID's failure to pay the agreed amounts to suppliers and contractors caused the suppliers and contractors to delay or refuse to perform services or supply materials, virtually ensuring that the projects undertaken by AMID would not be completed in a timely manner.

74. AMID used $12,000 of the funds it obtained from Kumar as a down payment for the custom closet from Eggersman. Eggersman refused to provide the closet and forfeited Kumar's down payment because AMID failed to make the subsequent payments for the closet. AMID then supplied a different, inferior closet to Kumar while charging Kumar the cost plus percentage for the closet that AMID neither paid for nor supplied.

75. Kumar has been damaged by Defendants' misrepresentations and the Bait and Switch Scheme.

76. The conduct of Defendants as set forth herein was willful and malicious.

WHEREFORE, the Plaintiff, Vikram Kumar, demands judgment in his favor and against Defendants Anthony Michael and Anthony Michael Interior Design, Ltd. for an amount in excess of $75,000, for pre-judgment interest and punitive damages, and for all other relief this Court deems just and proper.

## COUNT III
## CONSUMER FRAUD
### (AMID AND ANTHONY)

77. Kumar re-states the allegations of Count II.

78. At all times relevant, the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act") was in full force and effect in the State of Illinois.

79. Kumar is a consumer under the terms of the Act.

80. Defendants engaged in deceptive acts and practices, as specifically alleged above, by their misrepresentations to Kumar and by engaging in the Bait and Switch Scheme with regard to the Contract.

81. Defendants further engaged in deceptive acts and practices by failing to disclose their misrepresentations and the Bait and Switch Scheme despite knowing that Kumar entered into the Contract relying upon the veracity of their representations.

82. Kumar has been damaged by Defendants deceptive acts and practices.

83. The conduct of Defendants as set forth herein was willful and malicious.

WHEREFORE, the Plaintiff, Vikram Kumar, demands judgment in his favor and against Defendants Anthony Michael and Anthony Michael Interior Design, Ltd. for an amount in excess of $75,000, for pre-judgment interest, punitive damages and his attorneys' fees and expenses, and for all other relief this Court deems just and proper.

### COUNT IV
### BREACH OF FIDUCIARY DUTY
### (AMID AND ANTHONY)

84. Kumar restates the allegations of Count III.

85. At the time and prior to when Kumar and AMID entered into the Contract, AMID and Anthony repeatedly represented to Kumar that they would protect Kumar's interests and keep a close eye on the work to ensure that the cost of the project did not materially exceed the budget set forth in the Contract.

86. Due to the cost plus nature of the Contract, AMID and Anthony had sole possession of the information regarding AMID's cost of materials and labor used for the project, and Kumar was completely dependent on AMID and Anthony to truthfully and accurately apply the agreed-upon mark-up for the materials and labor used for the project.

FILED DATE: 11/9/2022 12:00 AM 2019L006285

87. By reason of the foregoing, Anthony and AMID invited, accepted and acquiesced in assuming primary responsibility to protect Kumar's interests in relation to the Contract and project.

88. Accordingly, AMID and Anthony were fiduciaries of Kumar.

89. AMID and Anthony had the duty to be loyal, open and honest with Kumar with regard to the Contract and the project.

90. Anthony and AMID have breached their fiduciary duties in the following respects:

   a. Applied additional markups for the materials and labor used for the project;

   b. Refused to provide Kumar with the invoices showing AMID's cost for the materials and labor used for the project;

   c. Concealed from Kumar that they marked up the materials and labor for the project at higher percentages than provided for in the Contract;

   d. Enriched themselves at Kumar's expense by using lower quality materials for the project than what was required by the Contract; and

   e. Concealed that they were going to manipulate Kumar into paying more than the Contract price by waiting three months to provide a Proposal to Kumar showing that they were billing him far in excess of the Contract price for the materials and labor used for the project;

91. Plaintiff has been damaged as a result of Anthony and AMID's wrongful actions.

92. Anthony and AMID's conduct was willful and malicious.

WHEREFORE, the Plaintiff, Vikram Kumar, demands judgment in his favor and against Defendants Anthony Michael and Anthony Michael Interior Design, Ltd. for an amount in excess of $75,000, for pre-judgment interest and punitive damages, and for all other relief this Court deems just and proper.

FILED DATE: 11/9/2022 12:00 AM 2019L006285

Respectfully submitted,
Vikram Kumar

By: */s/ Gary Hollander*
   One of his attorneys

Gary P. Hollander, Esq.
Attorney No. 30375
Attorney for Plaintiff
Aronberg, Goldgehn, Davis & Garmisa
330 N. Wabash Ave, Suite 1700
Chicago, IL 60611
(312) 828-9600
ghollander@agdglaw.com